WARREN, et al, Respondents, v. LINCOLN, et al, Appellants.

(235 N. W. 597.)

(File No. 6948.    Opinion filed March 16, 1931.)

See also 227 N. W. 442.

*Waychoff & Waychoff*, of Waynesburg, Pa., *E. P. Wilmarth*, of De Smet, and *Max Royhl*, of Huron, for Appellants.

*Warren & Eggen* and *E. F. Green*, all of De Smet, and *Boyce, Warren & Fairbank*, of Sioux Falls, for Respondents.

WARREN, J. Action brought for purpose of having a certain deed given by F. M. Andrews to the De Smet National Bank and a certain deed given by the De Smet National Bank to Wm. H. Warren, one of the plaintiffs herein, decreed to be mortgages upon certain lands in Kingsbury county, superior to a certain other mortgage given to one Ruth for $20,000 which was not filed in the register of deeds office until after the giving and filing of the first deed alluded to. The mortgagee Ruth for many years prior to the execution of the mortgage had lived at De Smet, S. D., but for several years prior to his death resided in Pennsylvania.

F. M. Andrews on November 1, 1918, borrowed $20,000 from Ruth. In February, 1923, an extension for five years was granted. The mortgage to secure the loan was not placed of record at the time the note and mortgage was executed on November 1, 1918, nor was it ever filed until after the extension was granted nor until after the death of the mortgagee Ruth by his administrator, one Charles J. Lincoln, who died July 21, 1925. The plaintiff Wm. H. Warren pleaded ownership to the fee title in himself to said premises and in trust for the use and benefits of Thomas Mears and others, contending that on the 5th day of August, 1925, F. M. Andrews was president of the De Smet National Bank until the bank failed and suspended business on the 21st day of May, 1926; that just prior to the 5th day of August, 1925, the De Smet National Bank was desirous of procuring for deposit certain Indian funds from the Department of Interior of the United States; and that in order to procure such deposits it was necessary to furnish

a bond executed by the bank and sureties, and that such sureties could not be officers of the bank. That the said F. M. Andrews of the De Smet National Bank in trying to secure such a bond represented to the prospective signers of the bond that they would furnish further as an indemnity against loss certain real estate comprising 640 acres which was only subject to an incumbrance of $9,000 consisting of three mortgages thereon, and that there was an equity in said section of land above the incumbrance which would indemnify them against probable loss on account of liability that might accrue under said bond. One of the plaintiffs, Wm. H. Warren, before signing the bond examined the records in the register of deeds office in Kingsbury county for the purpose of ascertaining the true condition of the records relating to incumbrances and liens and found none on record. That thereafter he, the said Wm. H. Warren, and the other bondsmen, signed and executed said bond, which bond was approved by John H. Edwards, Assistant Secretary of the Interior, and on the same day there was deposited with the De Smet National Bank certain Indian funds in the amount of $38,000, and that pursuant to the agreement of the said F. M. Andrews with the bondsmen to furnish them with an indemnity and while the approval was under consideration, and before such bond was approved, Andrews did execute a deed on the 9th day of September, 1925, conveying all of the land, to wit, the 640 acres for the benefit of the bondsmen; that in the execution of said deed the grantee named was the De Smet National Bank. The deed to the said bank was filed for record on the 24th day of September, 1925. The plaintiffs contend that the conveyance was made for the sole use and benefit of the bondsmen and that it never became the property of the bank and was not listed as an asset of the bank. Mr. Warren, one of the plaintiffs, had most of the conversations with Mr. Andrews and was clearly acting as agent for the rest of them. After all of this had occurred and on the 12th day of December, 1925, Mr. Andrews told Warren that he had made this deed and recorded it and brought the deed up to his office, and made the statement that if Warren wished he could change this deed or fix it so if the bank failed the bondsmen would not have any trouble in getting this land. Warren then suggested that it would be better to have the title of the land changed from the bank and deeded in trust to him for the bonds-

men. On the 14th of December, 1925, that was done. A deed was made to Mr. Warren, but this deed was not filed for record until the 21st day of May, A. D. 1926, at 11 o'clock a. m.

The defendants answered plaintiffs' complaint in the terms of a general denial and then set up an affirmative defense and also a defense and counterclaim in which they alleged the giving of the mortgage of $20,000 by Frank M. Andrews on November 1, 1918; that the said mortgage was not placed on record with the register of deeds of Kingsbury county, S. D., until December 14th, 1925, at 8 o'clock a. m. of said day (it covers the same property upon which the plaintiffs claim under two deeds). The plaintiffs and respondents admit the execution of defendants' mortgage in their reply, but denied that the mortgage was intended by the parties or considered to be used as security for the payment of the note, and allege that it was never the intention of the mortgagee that said mortgage would be considered or used as security for the payment of said note, and that said Ruth never intended such mortgage to be placed on record and he did not place it on record during his lifetime, and that it was not filed until some seven years after the execution and after the death of said Ruth by the administrator of the estate.

It appears from the record that this action was tried to the court, and that some time after the trial thereof the plaintiffs were permitted to add further testimony, and that thereafter findings, conclusions, and judgment were entered in favor of the plaintiffs and respondents. The defendants, feeling aggrieved thereby, then proceeded, obtained a transcript of the evidence, and took certain steps to present their motion to the court for a new trial and also an appeal to this court.

The respondents later procured an order to show cause requiring the defendants to show cause why the appeal should not be dismissed. The order to show cause was presented upon the affidavits of the moving parties and the affidavits in resistance thereof. This court, after hearing the order to show cause, made and filed its order on the 19th day of November, 1929, as follows:

"It is ordered that the motion, in so far as it is a motion to dismiss the appeal from the judgment is denied, but in so far as it is a motion to dismiss its appeal from the order denying a new trial

it is sustained, and the appeal from the order denying a new trial is hereby dismissed."

Notwithstanding that order to dismiss the appeal, the appellant on September 20, 1929, served an abstract and brief which purports to contain all of the evidence in the case, and contains all the assignments of error which were presented as specifications of error and specifications of insufficiency of the evidence to justify the findings of fact and conclusions of law in the lower court on a motion for a new trial. It covers not only errors occurring at the trial, but devoted considerable space in arguing that the findings of the trial court are not sustained by the evidence. The respondents served their brief specifically calling appellants' attention to the facts which had been urged in the moving papers on the order to show cause in which they sought to have the appeal dismissed. The appellants then served a reply brief and an additional abstract in which they asked the abstract be amended by showing certain substitutions by pages and numbers. No attempt was made in any way to correct the assignments of error, but claimed that the form and substance of the assignments of error fully complied with every requirement of the court.

From the view we take and on account of the previous order of this court, we must deal with this matter as presented to this court on the appeal from the judgment alone. It having been tried as a court case, the only matters before the Supreme Court are errors at law occurring at the trial, including the rulings upon evidence. First National Bank v. Thompson (S. D.) 227 N. W. 80, 81; Williamson v. Voedisch Jewelry Co., 35 S. D. 390, 152 N. W. 508. On an appeal from the judgment only, the question of the sufficiency of the evidence to sustain the findings made by the trial judge will not be considered by this court. This court in the case of Fuller v. James Murphy Harms Supply Co., 54 S. D. 492, 223 N. W. 713, 715, said:

"It is manifest, and we understand appellants now to concede, that the question of the sufficiency of the evidence to sustain the findings made by the trial judge will not be considered by this court on appeal from the judgment only."

Previous thereto this court held in case of Keyes v. Baskerville, 42 S. D. 381, 175 N. W. 874, as to what matter would be considered by this court upon appeal from the judgment only and

held that questions of insufficiency of the evidence could not be considered. We are forced to recognize the soundness of the principles of law therein announced, and we shall adhere to that rule and cannot question in this case the sufficiency of the evidence to support the findings made by the trial judge.

■ We have examined the assignments of error as to rulings upon the evidence. The appellants complain at length both as to the inadmissibility of the evidence elicited by the plaintiffs and also complain in not being permitted to sufficiently cross-examine certain witnesses. We cannot say that the court unduly restricted the cross-examination of the various witnesses. Neither do we believe that the court erred in its rulings upon the admissibility of the evidence. The action having been tried to the court, it is presumed that the court only considered competent, relevant, and material evidence; that from the competent, relevant, and material evidence it made its findings of fact and from its findings made its conclusion and judgment.

"As to the admission of evidence over defendants' objections, the rule frequently announced in the decisions of this court, and firmly established as the law of this state, has been stated as follows: 'The presumption is that the trial court did not consider or give weight to incompetent or improper evidence.' If there is evidence properly admitted and sufficient to support the decision, the admission of improper evidence is not ground for reversal in cases tried to the court." Knapp v. Brett, 54 S. D. 1, 222 N. W. 297, 298.

■ Certain assignments of error are predicated upon hearsay evidence introduced by the plaintiffs. A careful examination of the evidence in that respect does not lead us to believe that the court's findings were based upon hearsay evidence, as there was sufficient evidence received based upon evidence which was received without objection to fully sustain the findings of the trial court. The ruling on hearsay evidence is capable of several constructions but we believe that the evidence in this case complained of was not in the nature of hearsay. Jones on Evidence, § 303, states the rule quite concisely as follows:

"Statements apparently hearsay may be original evidence. It does not follow, because the writing or words in question are those of a third person not under oath, that therefore they are to be

considered as hearsay. On the contrary, it happens in many cases that the very fact in controversy is, whether such things were written or spoken and not whether they were true; and in other cases such language or statements, whether written or spoken, may be the natural or inseparable concomitants of the principal facts in controversy. * * * It is hardly necessary to cite authorities to the obvious proposition that, when proof is to be made of a parol contract, or when, for other reasons, the statements of a person are relevant, such statements may be proved by third persons who were present as well as by the one who used the language. In such case the statements are not hearsay, but substantive evidence."

Andrews testified to making the deeds and that he made the first deed and delivered it to the bank. He afterwards testified to the deed being executed and delivered from the bank to Warren. His testimony was competent, and for the purpose of showing why the deeds were executed, what he said in connection therewith was not hearsay, but admissible in order that the court might draw its inferences as to what was the actual facts existing at the time of the making and delivering of the deeds in question. The findings of fact made by the trial court bring this action within the Code provisions, and especially section 550:

"Any person holding real estate or any interest therein under such conveyance shall be deemed a purchaser in good faith and for a valuable consideration, unless such person at the time of the execution and delivery of such conveyance shall have had actual notice or knowledge of a prior unrecorded conveyance affecting the title to such real property."

The trial court found that the deed given by the bank to Warren would as a matter and under the operation of law constitute an assignment of the mortgage.

Section 1549, Revised Code, reads as follows:

"Every transfer of an interest in property, other than in trust, made only as a security for the performance of another act, is to be deemed a mortgage, except when in the case of personal property it is accompanied by actual change of possession, in which case it is to be deemed a pledge."

The court, in Bradley & Co. v. Helgerson, 14 S. D. 593, 86 N. W. 634, in determining the question as to whether a certain deed constituted a mortgage, there being no declaration of a trust

in the deed itself, found from the facts that it constituted a mortgage.

In construing section 2044 of our Revised Civil Code, in the case of Krug v. Kautz, 21 S. D. 461, 113 N. W. 623, 624, our court held:

" 'Every transfer of an interest in property, other than a trust, made as a security for the performance of another act, is to be deemed a mortgage. * * *' Under this provision of the Code, this court has uniformly held that a transfer of real property by deed made for the purpose of securing a loan constitutes a mortgage, and it seems too well settled at the present day that a deed executed as security for a loan may be shown to be a mortgage to require the citation of authorities. The court in such cases is fully justified in permitting proof of all the circumstances attending the execution of the deed and the actual intention of the parties for the purpose of determining as to whether or not it was executed and intended to operate as a mortgage."

■■ The trial court found that the conveyances constituted mortgages; that Mr. Andrews executed and delivered this deed to the bank to carry out the agreement to protect the bondsmen. The trial court was right in concluding that a trust in personal property can be established by oral evidence, in that he is supported by the rule stated in 26 R. C. L. at page 1194, which is decisive upon this feature of respondents' contention:

"In some jurisdictions an express trust cannot be created by parol, even as to personal property, but the great weight of authority is to the effect that the statute of frauds does not extend to trusts of personal property and that such trusts may be created and proved by parol. * * * So a trust may be created by parol in a real estate mortgage which is a personal chattel merely."

In Tapia v. Demartini, 77 Cal. 383, 19 P. 641, 643, 11 Am. St. Rep. 288, the Supreme Court of California treated a similar matter to the one at bar in which case a mortgage upon real estate was given to one man to secure money which had been advanced by two other men to the maker of the mortgage with the understanding that the mortgage was to be held in trust to protect the two men who had advanced the money to the mortgagor. The court in dealing with this dilemma said:

"As we understand the position of counsel for respondents, they contend * * * that it amounts to declaration of an express trust in lands, and cannot rest in parol. The question presented is not a new one. The decided cases are clearly to the effect that such an agreement as the one under consideration is valid and binding upon the parties. In this state a mortgage conveys no estate in the land, but is a simple lien upon the property. This being true, a transaction of this kind is not within the provisions of the Code that an express trust in lands cannot be created except by an agreement in writing, or a parol agreement fully executed. Being but a personal chattel, 'a parol trust may attach to a mortgage that the mortgagee shall hold it, in trust for his own benefit, and in part for the benefit of another.' * * * The proof of such an agreement does not vary the terms of the written instrument."

The appellants contend that the De Smet National Bank should be charged with notice of the knowledge of its managing officers as to the Ruth mortgage, and that the respondents likewise should be charged with notice. The trial court found that they acted with due diligence before the Indian bond was signed and then with the express understanding that the title to the land in question would be conveyed as security for their protection in signing the Indian bond. The title records being clear, the bondsmen signed and executed the bond for the deposit of the Federal Indian money. In determining whether or not Andrews acted in bad faith and made the proper disclosures, the trial court, in the absence of evidence to the contrary, did rightfully assume that Andrews did not impart to the bondsmen the fact that there was an outstanding mortgage to Ruth, and we believe that the rule laid down in 14A C. J. 490 must govern, which is as follows:

"The rule that notice to an officer or agent is notice to the corporation does not apply where the circumstances are such as to raise a clear presumption that he will not communicate his knowledge to the corporation, that is, where the fact is one which he is interested in concealing from it; and accordingly the corporation will not be charged with notice of facts of which an officer or agent acquires knowledge while acting in a transaction in which he is interested, either for himself or for another, adversely to the corporation."

In 7 R. C. L. p. 654, par. 656, knowledge is treated as follows:

"So knowledge which comes to an officer of a corporation through his private transactions, and beyond the range of his official duties, is not notice to the corporation, although he is, at the time, the managing agent of the corporation or the president thereof."

We must therefore hold that the findings of the able trial judge fully justify the conclusions and judgment awarding to the respondents and declaring that the deeds were valid and existing mortgages and liens upon the real estate set forth in plaintiffs' complaint, and that the plaintiffs are bona fide purchasers and incumbrancers for value under and by virtue of such conveyances and are entitled to hold the premises described as security to them to protect them against any loss which they might sustain by virtue of having executed a certain bond for the De Smet National Bank. We find no error which could in any event change the results of the learned trial court's decision.

The judgment appealed from is therefore affirmed.

POLLEY, P. J., and CAMPBELL, BURCH, and ROBERTS, JJ., concur.