FULLER, Respondent v. MIDDAUGH et al., Appellants

(77 N.W.2d 841)

(File No. 9542.   Opinion filed July 6, 1956)

**Arend E. Lakeman,** Mobridge, for Defendants and Appellants.

**W. M. Potts,** Mobridge, for Plaintiff and Respondent.

SMITH, J.   The subject matter of this litigation is a half section of Ziebach County land.   On April 1, 1931 the record owner thereof was one Olaf Johnson.   On that date Johnson conveyed by warranty deed to defendant Lawson E. Middaugh, and received from Middaugh a writing granting him the right to pay back $263.56 with interest on or before April 1, 1932, in which event Middaugh agreed to convey back to Johnson.   Middaugh placed the Johnson deed of record. Johnson never exercised his right to make the described payment to Middaugh. On August 16, 1943 a tax deed issued to Ziebach County.   In April 1948 the county deeded to the plaintiff, Charles M. Fuller.   In March 1953 plaintiff brought this action to quiet title to the property.   The defendant Middaugh by counterclaim, and by cross bill against Ziebach County, sought a decree quieting title to the half section.   The trial court refused to quiet title in either party. By its findings and conclusions it determined that the tax deed to Ziebach County was void, and that the deed from Johnson to Middaugh was given as security for the repayment of the above described sum and is a mortgage.   Middaugh has appealed.

■ The first contention of defendant Middaugh is that the clear preponderance of the evidence is against the finding of the trial court that the deed from Johnson to him was to secure the repayment of $263.56 with interest. It is his position that the transaction between Johnson and himself was a conditional sale.

■ Every transfer of an interest in real property, other than in trust, made only as security for the performance of another act, is to be deemed a mortgage. SDC 39.0202. The fact that a transfer was made subject to defeasance on a condition, may, for the purpose of showing such transfer to be a mortgage, be proved, except as against a subsequent purchaser or incumbrancer for value and without notice, though the fact does not appear by the terms of the instrument. SDC 39.0203. Whether a deed, absolute in form, and an agreement by the grantee to reconvey together constitute a mortgage or a conditional sale depends upon the intention of the parties. This controlling intention is to be ascertained from the written memorials of the parties, and from all the facts and circumstances. Stotts v. Swallow, 69 S.D. 558, 12 N.W.2d 808; American Nat. Bank v. Groft, 56 S.D. 460, 229 N.W. 376; and Wilson v. McWilliams, 16 S.D. 96, 91 N.W. 453. See Parks v. Mulledy, 49 Idaho 546, 290 P. 205, 79 A.L.R. 937; Newport v. Chandler, 206 Ark. 974, 178 S.W.2d 240, 155 A.L.R. 1104; and L.R.A.1916B, 18, at page 69.

The only testimony with reference to the transactions between Johnson and Middaugh came from Middaugh. At the times in question Middaugh was a licensed pawnbroker at Casper, Wyoming. His original transaction with Johnson was in the form of a loan secured by a chattel mortgage upon a house trailer. In his direct examination he stated that the deed to the Ziebach County land was given in settlement of a debt. His cross-examination contains these questions and answers:

"Q. You state that this instrument, exhibit '4', (the contract to reconvey) represents a loan does it, that you made to him? A. Yes—it represents a debt that he owed to me—yes sir." * * *

"Q. And it was as a pawnbroker that you made this loan to him in the first place and later took this

warranty deed as security—is that right? A. I don't recall really what the situation was—it was for a loan that he had gotten and being unable to make it—he gave me this agreement which gave him a years extension—that is the way that it came about. He wanted a years extension so that is the way that we did it." * * *

"Q. Did he leave any other security with you besides this deed that he gave you? A. No sir." * * *

"Q. Before he gave you this deed did you have any other security? A. He had a house trailor—I think that we had a mortgage on that." * * *

"Q. Did you give him a satisfaction of that mortgage or did you get title to the house trailor? A. We released the house trailor." * * *

"Q. How long did you carry the house trailor loan? A. Oh we didn't have it very long—he wanted to move somewhere and he wanted the house trailor so we made this arrangement so he could move his house trailor."

The contract to reconvey (exhibit 4) reads as follows:

"To Whom It May Concern:

Olaf Johnson has this day given me a warranty deed of the following described land in Ziebach County, South Dakota to-wit: (describing the land) in consideration of $263.56.

I hereby agree that Olaf Johnson may, and has the right, at any time on or before April 1st 1932, to pay me back the said sum of $263.56 with interest at 8% from and after April 1st 1931, in which event I agree to give a warranty deed back to said Olaf Johnson for said 320 acres. If Olaf Johnson does not pay said sum, as above provided, on or before April 1st 1932, then said 320 acres are mine absolutely.

Dated at Casper, Wyoming, this 1st day of April 1931."

Middaugh recorded his deed but the above quoted instrument was not placed of record. He has never seen the land. After receiving the conveyance he made no inquiry about the property and did not attempt to lease it. He never inquired about the taxes, nor did he ever pay any taxes on

the half section. Except for a showing that it was then assessed at a value of $1,540, no attempt was made at the trial to establish its value on April 1, 1931.

■■ The parties framed their agreement in terms of a conditional sale. Therefore, clear and convincing evidence should be required to persuade the trier of the fact that their real object was to create a mortgage. Cf. L.R.A.1916B, 18, at page 237. The issue is not between the original parties; it arises between the grantee and one claiming under an independent title. Hence the rule of equity, often applied as between the original parties, that in doubtful cases the transaction should be held to be a mortgage is not invoked. American Nat. Bank v. Groft, 56 S.D. 460, 229 N.W. 376. Cf. Wilson v. McWilliams, 16 S.D. 96, 91 N.W. 453. Neverthless, a careful consideration of all of the evidence convinces us that it is such as could reasonably create an abiding conviction in the trial court that the parties intended a security transaction. Therefore, we cannot say that the clear preponderance of the evidence is against the finding of the trial court.

Middaugh spoke as a witness from long years of experience in the business of making loans. He testified that his original transaction with Johnson was in the form of a loan secured by a chattel mortgage on a trailer house. The negotiations which lead up to the transaction we are considering originated in a request for an arrangement which would make it possible for Johnson to move his trailer house, and for an extension of time in which to make payment. Middaugh said that the instrument represented a debt. He said "He wanted a years extension so that is the way that we did it." He also said "We made this arrangement so he could move his house trailor." When asked whether he gave Johnson a "satisfaction" of his chattel mortgage, this man of years of experience in making small loans replied, "We 'released' the house trailor." It is this and other testimony of Middaugh which supplied the court with clear and convincing proof that the debt of Johnson to Middaugh subsisted after the April 1st transaction. The fact that the debt continued after such a transaction is a cardinal criterion that the parties intended a mortgage. 59 C.J.S., Mortgages, §

39, p. 75. Pomeroy's Equity Jurisprudence, 5th Ed., §§ 1192 and 1195. Cf. American Nat. Bank v. Groft, supra. Moreover, all of the surrounding circumstances support that inference. There was no talk of purchase and sale; no price or value was discussed; the amount involved was all out of proportion to the probable value of the property; and the subsequent conduct of the grantee does not indicate that he deemed himself to be the owner and in possession of the half section. Viewed as a whole these are impelling circumstances. Muller v. Flavin, 13 S.D. 595, 83 N.W. 687.

■■ His next contention is that plaintiff, who claims through an independent title, is not in position to question the deed from Johnson. This contention overlooks the fact that to obtain a decree quieting title in himself it was necessary for Middaugh to establish his title. Only through the strength of his own title could he recover the judgment he sought. Morse v. Pickler, 28 S.D. 612, 134 N.W. 809; and Waldner v. Blanchnik, 65 S.D. 449, 274 N.W. 837. His evidence established that the deed under which he claimed was a mortgage. By his deed he acquired a lien, and the title remained in Johnson. In Mustar v. McComb, 40 S.D. 205, 167 N.W. 232, at page 233, it was written: "It is therefore clear that the conveyance was a mortgage. Being a mortgage, even though there was no written defeasance, the legal title to this land remained in the grantor, though, upon the recording of the instrument, the title appeared of record in the grantee. We recognize that there are authorities holding that a conveyance, in form a deed absolute, though in fact a mortgage, conveys the legal title, leaving in the grantor but an equity of redemption. There may be transactions which, from the peculiar facts connected therewith, show that, although the conveyance was intended as a security, yet, in order that the purposes contemplated by the parties may be carried out, the grantor intended to convey the legal title to the grantee. Such was the transaction involved in Muller v. Flavin, 13 S.D. 595, 83 N.W. 687. But, with the proposition that a conveyance absolute in form always conveys the legal title, even though such conveyance is in fact a mortgage, we cannot agree. * * *"

Manifestly, the conclusion of the trial court was based

upon the failure of Middaugh's proof to show that he was the owner in fee as he alleged in his counterclaim.

■ The final contention of the defendant Middaugh is predicated on the lapse of time, and the much repeated statement "that the right to foreclose and the right to redeem are reciprocal rights, and that if the one right, that to foreclose, is barred, the other right, that to redeem, is also barred." We understand his counsel to reason that if both the right to redeem and the right to foreclose are barred the title of Middaugh is established. Accepting the premise that both Johnson's so-called right of redemption, and Middaugh's right of foreclosure are barred by the mere lapse of time, it is our opinion that, in the circumstances of this case, the title is established as remaining in Johnson.

Viewed in its relation to Johnson and Middaugh the land was vacant and unoccupied. Middaugh has never been in possession of the property. The transaction of April 1, 1931, failed to transfer the legal title from Johnson. We are unaware of any principle of law which under the described circumstances could operate to create a title in Middaugh by the mere lapse of time. Of such circumstances as are here present, Justice Mitchell expressed his opinion in these words, "If the land remains vacant and unoccupied, when the right of foreclosure is barred, the land remains the property of the mortgagor, for his legal title would draw to it the constructive possession. In that respect the result would be just the opposite from what it would be under the old common-law mortgage, for under the latter the legal title and right of possession were in the mortgagee." Bradley v. Norris, 63 Minn. 156, 65 N.W. 357 at page 360. Citing that case as authority, Tiffany on Real Property, 3d Ed., § 1501, makes the following observation about the statement on which defendant grounds this final contention, viz., "This statement, it has been said, can properly mean no more than that so long as an instrument is to be regarded as a mortgage for the purposes of one party it must be so regarded for the purposes of the other. If it be given a more extended effect, as has been well remarked, a person might one day be a mortgagee, having, in most jurisdictions, a lien merely on the premises, and the next day be their absolute owner,

and this, it might be added, without any action on his part to enforce his security, but merely by reason of his failure to enforce it. * * *"

It is our view that this final contention is equally unavailing to Middaugh.

The briefs and the argument at bar have covered a wide range and have dealt at some length with the validity of the conclusion of the trial court that the tax deed under which plaintiff claims is void. We have no occasion to consider that issue; it was resolved by the trial court; and neither the plaintiff nor the county has appealed.

The judgment of the trial court is affirmed.

All the Judges concur.